BECKER, Judge.
Plaintiffs are all City of New Orleans employees who were either laid off or demoted as a result of the layoffs in August of 1986. The majority of the plaintiffs have since been reinstated to their positions held prior to August 1986. This appeal arises from the hearings conducted by the Civil Service Commission pursuant to the judgment rendered by this Court in Firefighters Local 632 v. Civil Service Commission, 495 So.2d 958 (La.App. 4 Cir. 1986), writ denied, 499 So.2d 84 (La.1987). In Firefighters, this Court remanded the matter to the Civil Service Commission for hearings on the individual complaints. Plaintiffs appeal the Commission’s denial of their requests for relief.
In August 1986, as a result of budgetary constraints, many City employees were laid off or demoted to classifications of work which they formerly held. These actions were conducted in accordance with Rule XII of the Civil Service Commission Rules, which provides the order and ranking of probationary and permanent employees for layoffs and demotions within the various departments and agencies of the City.[1] The ordering within the ranks of classified employees is based upon a system of Service Ratings, years of continuous service with the City and a series of tie-breaking steps.
In Firefighters Local 632, v. Civil Service Commission, supra, a group of firefighters adversely affected by the layoff brought suit challenging the use of service ratings in the layoff procedure. The trial court, in Firefighters, declared Rule XII of the Civil Service Commission “invalid as it applies to the August 1986 reduction in force within the New Orleans Fire Department,” enjoined the use of the service ratings, and ordered the individual plaintiffs restored to their former positions.
The City and Commission appealed to this Court seeking reversal of the trial court’s decision. We held, in Firefighters, that Civil Service Commission Rules XI and XII were constitutional, that the Commission had the constitutional authority to integrate service ratings with seniority for purposes of budget-mandated demotions and layoffs, and that the trial court was without authority to order reinstatement of the individual complainants.
In accordance with the Court’s suggestion that “the Commission will take the appropriate administrative actions” to investigate plaintiffs’ complaints of the failure of fire department supervisors to carry *525 out the intent of Rule XI[2], the Commission announced a period of time within which complaints from the layoffs and/or demotions would be heard.
In its “Findings of Fact,” the Commission stated that the purpose of the hearings was
to investigate the truth of the allegations that the Service Ratings was not fairly administered so that the commission could (1) accord relief to those individual employees who were improperly treated, (2) take steps to insure that the Service Rating system was properly administered in the future and (3) take disciplinary action, if and when appropriate, against those supervisors whose failure to discharge their duties in a responsible fashion undermined the efficacy of the Service Rating system.
The Commission found that the complaints of Richard Aliff, Denis Cameron, Wayne Corcoran, Paul Duplantis, Mark En-calarde, Felton Harrison, Milton Helmke, Numa Jones, Merrill Juneau, Garry Mo-ntegue, Michael Morford, Ernest Pollock, Lloyd Robichaux, Theodore Riddick, Alfred Rodrigue, Bruce Fontana, Leon Rudloff, Rodney Savoie, Robert Schmitt, Richard Smith, Luis Suarez, Jr., Thomas Thompson, Earl Valois, Jr., and Jerry Wiltz were inadequate to disturb the ratings received and actions taken in regard to them.
The complaints of the above mentioned firefighters were held not to present the “level of danger to a fair evaluation process that would require disturbing the ratings.” The Commission stated that these employees had several complaints in common, and concluded that the complaints were insufficient to grant relief:
(1) The Professed Belief By A Supervisor That The Ratings Were Merely Routine Paperwork And Not Important. This complaint was especially prevalent in the Fire Department. Upon closer examination it appears that most supervisors were quite aware that in case of a layoff, the employee’s job rating could figure in the layoff process. Since nobody in the Fire Department had been affected by prior layoffs most supervisors believed that the Department would be immune in future layoffs. Nevertheless, most supervisors testified that they took the rating process seriously in that they attempted to perform the task conscientiously and accurately. The belief that the rating system was not important was widespread among those who were rated, yet they were aware that it was conducted annually and were asked to sign the rating forms to indicate that they had an opportunity to discuss the ratings with their supervisor. At this point on the form, the employee was accorded space to make comments about the evaluation. Very few employees who now object to their ratings for purposes of layoff availed themselves of the opportunity to object to their ratings when they were formulated. The Commission cosidered this failure to object to a rating as a relevant factor in evaluating the employee’s current objection to the rating process.
(2) The Expressed View By Supervisors That They Have Been Too Harsh In The Evaluation Process and That In Retrospect They Would Have Rated The Employees Higher. This view was expressed most frequently in the Fire Department. From the course of all of the hearings it became clear that the nature of the work in the Fire Department, the dangers faced by the employees, and the almost family-like relationship that exists among the employees made the layoff process especially painful. Virtually every supervisor testified that he believed that the employees he supervised were superior to most others in the Department and that in retrospect he had been too rigorous in his evaluations. This conclusion was based in good measure on the perception that ‘less capable’ employees elsewhere in the Fire Department were retained while his ‘superior’ employees were laid off or restored to lower *526 level job classes. Several supervisors testified that following the 1986 layoffs, they had rated all of the employees under their supervision as ‘outstanding’ in all categories so that they would not be the object of future layoffs. The ratings of employees in the Fire Department following the layoffs have been predominantly ‘outstanding.’ While the New Orleans Fire Department is no doubt a fine one, the Commission has concluded that the ratings prior to the layoffs were a more impartial estimate of the relative quality of the employees than the ratings given since the traumatic events of 1986. Accordingly, the Commission will not disturb personnel actions based on ratings simply because of supervisors’ testimony that in retrospect they would have rated their employees higher.
(3) That Not All Supervisors Were Trained In The Use of The Evaluation Form. The District Court and the Court of Appeal confirmed our own conclusion that adequate training in the use of the form was available. Many supervisors, especially in the Fire Department, failed to attend training sessions. However, during the course of the hearings, a number of supervisors testified that the forms was self-explanatory and that the training they received either before or after the layoffs confirmed their understanding of the terms of the form. Those supervisors who claimed to have changed their views of the meaning of the form after having attended training following the layoffs usually expressed the view that they had been too tough in their initial evaluations. However, when cross-examined about their initial evaluation efforts and the difference in their perception of the form following training, they were not able to articulate a significant difference.
(4) That The Form Was Not Suitable For Use In the Fire Department. A number of supervisors and employees complained that the form was not specifically tailored for use in the Fire Department. Upon cross-examination, virtually every person expressing this complaint was forced to admit that the form was understandable, but that more explicit adaptation to the Fire Department would be helpful.
(5) That The Supervisor Was Not Qualified To Rate The Employee Because He Did Not Possess Sufficient Training In The Job Skills or Had Not Supervised The Employee Long Enough or Was Having Personal Problems of His Own That Made His Ratings Suspect. It is frequently the case that a supervisor of a number of individuals may not possess some of the skills possessed by those he supervises. That does not mean that the supervisor does not possess that capability of rendering a judgment concerning the employee’s competence. In each case, the supervisor testified as to the reasons for his evaluation of the employee. After considering this evidence, the Commission believes that, except in rare cases mentioned below, the supervisor was in a position to render a fair and accurate appraisal of the employee’s performance. In those cases where we felt the supervisors did not have adequate information upon which to base their evaluations, we afforded appropriate relief. See Section IV which follows.
(6) That The Standards For Appraisal Varied From Supervisor to Supervisor. This is an inevitable consequence of any evaluation system based on other than a totally objective criteria. The use of a standardized form was designed to minimize this factor, but the alternative is to eliminate job performance from consideration in layoff procedures. Such a step would be contrary to the letter and spirit of the Louisiana Constitution and the mandate of the Civil Service System. The Commission examined the testimony of the supervisors closely and believes that the variations in standards that could be detected were not sufficiently great to detract from the fairness of the rating system.
(7) That The Employees Believed That They Merited Higher Ratings. Most of the employees who pressed complaints concerning the evaluation process were not shrinking violets. They firmly be *527 lieved that they merited higher ratings than they actually received. Most people feel this way about themselves and could find others who share their views of themselves. The Commission could not accord much weight to such testimony. The testimony of the supervisor as to the process he used in arriving at the evaluations and the basis for the evaluation was much more probative. To permit an employee to challenge the rating system on the basis of his own opinion of himself would totally undermine the process as an effective management tool.
Plaintiff, Melvin Collongues, was held to lack the right to appeal from the operation of the demotion process specified by Rule XII. Another plaintiff, Gerard Aitken,
was rated for three years by the same supervisor. The ratings improved from the first to the second year but then declined to the level of the first year. Mr. Aitken’s supervisor testified that he had intended to give Mr. Aitken the same ratings for the third year as for the second, but that he erroneously copied the ratings from the first year on to the third year’s form. This is an objective error that could result in relief. The Commission examined Mr. Aitken’s ratings and corrected them to reflect what his supervisor actually intended to do. This change by the Commission did not affect Mr. Aitken’s layoff.
******
Jacob Kirsch, Jr. and Henry Gibson were rated by their supervisor but their ratings were reduced by his supervisor on the basis of the fact that they did not possess certification as Emergency Medical Technicians (EMT), a certification deemed to be very desireable for Firefighters stationed at the airport. On the basis of the testimony adduced at the hearing, the Commission believes that the Fire Department had not clearly made EMT certification a requirement for employment at the airport, and therefore to reduce the ratings of these Firefighters on this basis was improper. The Commission recalculated the ratings of these Firefighters to the higher level originally given by their supervisor. The recalculation did not change their layoff.
In addition to the argument that the Commission’s decision was manifestly erroneous, and arbitrary and capricious, plaintiffs contend that the Commission was a biased fact-finder, thus negating the validity of its decisions. The plaintiffs suggest the Commission was biased against the claimants as the Commission was a defendant in the previous litigation in which the constitutionality of the ratings system was contested. We disagree. The United States Supreme Court has stated
Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); FTC v. Cement Institute, 333 U.S. 683, 700-703, 68 S.Ct. 793, 803-804, 92 L.Ed. 1010 (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not ‘capable of judging a particular controversy fairly on the basis of its own circumstances.’ United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); see also FTC v. Cement Institute, supra, 333 U.S. at 701, 68 S.Ct. at 803. Hortonville J.S.D. No. 1 v. Hortonville Ed., 426 U.S. 482, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976).
We find that the Commission is capable of determining whether relief from the layoff procedures should be accorded to the individual complainants. The Commission’s role in the previous litigation was simply to defend its belief that the ratings system was constitutional. These actions, along with its decision-making abilities, are all within the Commission’s powers as defined by the legislature. Further, the Commission’s investigation into the firefighters’ complaints did not deal with its role in the ratings received by each individual. The Commission’s purpose behind the hearings was to determine whether the officers within the fire department were fair in the *528 utilization of the ratings system. It must also be noted that those who testified in the previous litigation were employees of the City of New Orleans’ personnel department or employees of the Commission. None of the commissioners themselves were involved individually in the previous litigation. Therefore, plaintiffs’ argument that the Commission was a biased fact-finder is without merit.
Decisions of the Civil Service Commission are subject to review on any questions of law or fact by a court of appeal. La-Const. Art. X, Section 12(B). Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984); Lee v. New Orleans Sewerage and Water Board, 517 So.2d 1223 (La.App. 4th Cir.1987). The manifest error or clearly wrong standard should be utilized in reviewing the Commission’s findings of fact. Walters, supra; Lee, supra; Sanders v. Department of Health and Human Resources, 394 So.2d 629 (La.App. 1st Cir.1980), writ denied, 399 So.2d 602 (La.1981); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir.1978); Michel v. Department of Public Safety, Alcoholic Beverage Control, 341 So.2d 1161 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1078 (La.1977). Therefore, the Commission’s findings of fact should not be reversed or modified unless a finding is clearly wrong or manifestly erroneous. Walters, supra; Arcen-eaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). After reviewing the transcripts from the Commission’s hearings, we can not say that the Commission’s findings in regard to the following claimants are clearly wrong or manifestly erroneous: Gerard Aitken, Richard Aliff, Melvin Col-longues, Wayne Corcoran, Paul Duplantis, Mark Encalarde, Bruce Fontana, Lloyd Ro-bichaux, Henry Gibson, Theodore Riddick, Jacob Kirsch, Felton Harrison, Numa Jones, Thomas Thompson, Garry Mo-ntegue, Michael Morford, Alfred Rodrique, Leon Rudloff, Rodney Savoie, Richard Smith, Luis Suarez, Earl Valois and Jerry Wiltz.
The findings in regard to Denis Cameron and Ernest Pollock are reversed. Both men were rated by someone who was not their supervisor for at least ninety days during the ratings period. The Civil Service Commission, in its supervisor’s manual on job counseling and evaluations distributed to the fire department, provides that an employee must be evaluated by one who has supervised the employee for at least ninety days.
In the section entitled “Administrative Policies and Procedures,” the manual provides:

Who Makes the Ratings?

1. The employee’s immediate supervisor is the person who actually rates the employee’s performance. The immediate supervisor is that person who:
a. assigns, directs, and checks the employee’s work
b. is responsible for disciplining the employee
c. is accountable for the employee’s work
d. has had the employee under his or her supervision at least ninety (90) days. If not, the Job Counseling and Evaluation Report shall be completed by the employee’s previous supervisor.
2. Employees who have been employed under more than one supervisor during a rating period shall be rated by the supervisor having supervision of the employee for more than ninety days at the time the ratings is prepared. The rating supervisor may consult the employee’s previous supervisor in preparing the rating.
For the years 1984 and 1985, Denis Cameron was rated by captains who had him under their supervision for only 22-25 days. During these years, while Cameron was assigned to a unit, he was detailed to the Supply Room, and under the direct supervision of Burt Gilmore and August Corcoran. Both Gilmore and Corcoran testified that if they had evaluated Cameron, they would have given him a rating of 4.0, which is “Exceeds Requirements,” for both 1984 and 1985. Therefore, Cameron’s average rating for the years 1983 through 1985 *529 would have been 3.9, “Exceeds Requirements.”
Plaintiff, Ernest Pollock, contests his 1985 rating which was conducted by a captain who supervised him for only three weeks. In December of 1985, Pollock was transferred to Captain Serpas’s unit. In early 1986, Serpas evaluated Pollock for the year 1985. Serpas did not consult with Captain Urbeso, Pollock’s supervisor from January to December 9, 1985, in preparing the evaluation. Serpas gave Pollock a rating of 3.3, which is “Competent.” However, we feel that under the rules set out, Urbeso, not Serpas, was the proper person to evaluate Pollock. Urbeso testified that had he evaluated Pollock, he would have assigned an “Exceeds Requirement” rating. Given Urbeso’s testimony, Pollock’s average rating for the years 1983,1984 and 1985 should have been 3.797, an “Exceeds Requirement.”
While there is sufficient evidence for this court to modify the average of the ratings received by Cameron and Pollock for the years 1983 to 1985, there is nothing in the record to indicate whether the modification of these ratings would affect claimants’ positions in the layoff process. It is necessary for this matter to be remanded to the Civil Service Commission for such a determination.
The decisions concerning Milton Helmke, Merrill Juneau and Robert Schmitt are also reversed. The supervisors of these men were told by their supervisors to keep the evaluations within the “Competent” level. Captain Norman Durapau, Milton Helmke’s supervisor, testified that he just used a combination of “Exceeds Requirements” and “Competent” rankings on each characteristic evaluated to arrive at an average rating of “Competent.”
Plaintiffs, Merrill Juneau and Robert Schmitt, never saw their yearly evaluations. Their captain, James Rush, had his men sign their evaluation forms prior to actually rating the men. Further, Rush testified that he was ordered by his supervisor to evaluate his men so that they would fall into the “competent” range. We find that these men did not receive fair evaluations for the years 1983 through 1985. As these evaluations were used to determine each employee’s position in the layoff of August 1986, it is essential to determine whether these men would have been laid off if they had received fair evaluations. As there is not sufficient evidence before this Court to determine plaintiffs’ status had adequate evaluations been performed, it is necessary to remand the complaints of Milton Helmke, Merrill Juneau and Robert Schmitt to the Civil Service Commission for further hearings.
Accordingly, the judgment of the Civil Service Commission is affirmed in part, reversed and rendered in part, and remanded in part for hearings to be conducted by the Civil Service Commission in accordance with this opinion.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED IN PART.
APPENDIX
Rule XI
SERVICE RATINGS
(as adopted December 9, 1953, amended May 19, 1954, April 10, 1975, July 22, 1975, May 11, 1978, February 28, 1979, and June 9, 1983)
Section 1. ADMINISTRATION
1.1 A uniform service rating system for all organization units is established, which system shall include provisions for periodic rating of employees on the basis of performance. The Director shall prescribe the form on which service ratings are to be made and each organization unit shall use the form prescribed by the Director in accordance with these rules and the instructions given on the official form and its accompanying manual.
1.2 The service rating period July 1, 1982-June 30, 1983 is extended by six months to December 31, 1983. As of January 1, 1984, and annually thereafter, the appointing authority of each organization unit shall have a service rating made of each regular (permanent) employee in that organization
*530 unit who has worked in the classified service during that rating period. However, if the employee has not worked for the current appointing authority for at least ninety (90) days during the rating period, the employee shall be rated by the appointing authority under whom the employee has most recently worked for at least ninety (90) days during the rating period. If the employee has not worked under any appointing authority for at least ninety (90) days, he shall be rated by the current appointing authority. Service ratings shall be made by the supervisor designated by the appointing authority as the individual most familiar with the employee’s work during the rating period. Such service ratings shall be prepared for all regular employees, including those currently serving in emergency, transient, provisional or probationary appointments. The service rating shall be discussed with the employee, and after such discussion, the employee shall sign the rating, but this act of signing shall be evidence only of the fact that the rating has been submitted to the employee and discussed with the employee. Any refusal to sign shall be so noted on the official rating form.
A rating made by the supervisor and signed by the employee shall then be reviewed by the appointing authority or the designated agent. The appointing authority or designate shall sign the rating as presented or as corrected, and, when thus signed by the appointing authority or designate, the rating shall become effective as the official service rating of the employee for the period indicated thereon. Any modification by the appointing authority of the supervisor’s rating of the employee shall be communicated to the employee and the supervisor.
1.3The appointing authority shall submit the original copy of the completed service rating and a certified list of the employees who were rated to the Civil Service Department no later than April 1, 1984, and annually thereafter not later than April 1.
1.4 There shall be five possible service ratings, one of which shall be used in rating each employee. The service ratings are: “Outstanding”, “Exceeds Requirements”, “Competent”, “Needs Improvement”, and “Unsatisfactory”.
1.5 An employee who is rated “Unsatisfactory” shall have a right of appeal to the appointing authority or to a service rating appellate board which the appointing authority may designate to hear such appeal. The employee must appeal in writing within thirty (30) days after receiving official notice of the “Unsatisfactory” rating, specifying what the rating should be and the reasons therefor. The appointing authority or appellate board, if an appellate board has been designated as herein provided, shall hear the appeal, have prepared an official record of the proceedings and render a written decision within thirty (30) days, sustaining or modifying the rating which has been appealed.
1.6 After a final written decision of the appointing authority has been rendered, an employee whose rating remains “Unsatisfactory” may appeal to the Director of Personnel for a further review of the “Unsatisfactory” service rating. The appeal to the director of Personnel shall be based solely on the official record established at the hearing of the appeal before the appointing authority or the appellate board of the organization unit. An appeal to the Director of Personnel must be filed, in writing, by the employee within thirty (30) days of the effective date of the decision of the appointing authority or the appellate board of the organization unit. After review, a written notice of the final decision of the Director of Personnel shall be provided to the employee.
1.7 Once the “Unsatisfactory” rating has been determined to be final, the work performance of an employee who received the “Unsatisfactory” rating shall be reviewed by the appointing *531 authority for a period of ninety (90) days. At the conclusion of this review period, the appointing authority must state in writing to the Director of Personnel whether or not the employee’s work performance has improved. If, upon review, the work performance has not improved, the appointing authority shall take appropriate disciplinary action under the provisions of Rule IX.
1.8 The Director may investigate the accuracy of reports of ratings under the system adopted, and may adjust the ratings to conform to the facts as ascertained.
(Sections 1.1-1.8 Amended June 9, 1983, effective June 9, 1983)
RULE XII
LAYOFFS
(adopted December 9, 1953, amended May 19, 1954, June 9, 1954, May 8, 1958, July 22,1975, November 8, 1979, September 11, 1980, November 12, 1981, October 26,1982, March 13,1986, May 22, 1986)
Section 1. ADMINISTRATION (amended March 13, 1986)
1.1 If it becomes necessary to reduce the working force in the classified service because of fiscal constraints or some other cause, the appointing authority of the organization unit affected must notify the Director of Personnel before a layoff of employees can be initiated, (amended March 13, 1986, effective March 13, 1986)
Section 2. DESIGNATION OF ORGANIZATION UNITS AFFECTED
2.1 At least forty-five (45) days prior to the effective date of a proposed reduction in the work force, the organization units to be affected must be designated and the Director of Personnel must be notified in writing of their selection. Upon receipt of this information, all personnel transactions throughout the service shall be reviewed for their effect on the forthcoming layoff and
may be held in abeyance until the layoff process has been completed.
Section 3. UTILIZATION OF VACANT POSITIONS IN LAYOFFS (amended March 13, 1986)
3.1 Whenever a position held by a permanent employee is abolished, either as the result of a reduction in operating funds or from the termination of a particular program, the employee shall be reinstated to any vacant position in the same class throughout the classified service, provided the employee possesses the requisite qualifications and experience to perform the job. Thé provisions of section 4.3 of this Rule shall govern the filling of vacant positions once the layoff of personnel has been initiated, (amended March 13, 1986)
Section 4. SUCCESSION OF LAYOFFS (amended November 12, 1981, March 13, 1986)
4.1 After compliance with the previous sections of this Rule, the succession of layoff steps shall be implemented in accordance with the following sequence:
(a) All employees in Emergency appointments in the organization unit affected, who do not have permanent status in another class, shall be removed in inverse order of length of continuous service.
(b) All employees in Transient appointments in the organization unit affected, who do not have permanent status in another class, shall be removed next, in inverse order of length of continuous service.
(c) All employees in Provisional appointments in the organization unit affected, who do not have permanent status in another class, shall be removed next, in inverse order of length of continuous service.
(d) If a further reduction of classified personnel is necessary in the organization unit affected, the appointing authority of that organization unit shall designate the class(es) of work to be reduced and notify the Director of Per *532 sonnel in writing of the class(es) selected. (amended November 12, 1981, effective December 1, 1981)
(e) Upon receipt of this designation of class(es), all classified employees in the designated class(es) in every agency, board, commission, and department shall be ranked as a group, in accordance with the provisions of Sections 4 and 5 of this Rule. Upon completion of the ranking of all classified employees in the designated class(es) throughout the classified service, a service-wide reduction of personnel in the designated class(es) shall commence, (amended November 12,1981, effective December 1, 1981, amended March 13, 1986, effective March 13, 1986)
(f) All employees in original entrance Probationary appointments in the designated class(es), who do not have permanent status in another class, shall be ranked in inverse order of length of continuous service and removed before any regular employee in the designated class(es). (amended November 12, 1981, effective December 1, 1981)
4.2 The service-wide reduction of personnel shall proceed in accordance with the layoff steps specified in this Rule until the number of employees laid off equals the reduction in the funding level for those abolished positions in the various designated organization units throughout the classified service, (amended March 13, 1986)
4.3 Upon completion by the Civil Service Department of the mechanics of the layoff steps, transfers shall be effected for those employees whose present positions have been abolished, but who have a higher rank on the service-wide layoff list than other employees in organization units throughout the classified service. The opportunity for selecting positions scheduled to become available when the layoff of personnel is actually implemented shall be given to individuals according to their rank on the layoff list in the manner deemed most practicable by the Director of Personnel. However, no appointing authority shall be required under the provisions of this Rule to accept any employee previously dismissed from that agency, (amended March 13, 1986)
4.4 Employees in the designated class(es), who have completed their probationary period and have attained permanent status but who have not received a service rating, shall be ranked in inverse order of length of continuous service and shall follow original entrance probationary employees in the layoff succession.
4.5 Any regular employee who, in accordance with the provisions or Rule VIII, Sec. 6.1 has been granted a leave of absence to accept a position in the unclassified service of the city, shall be given an annual service rating by the appropriate appointing authority in the unclassified service, pursuant to the requirements of Rule XI, Sec. 1.2. Should a regular employee on such leave or other regular employee(s) who are eligible to be rated fail to receive a service rating, they will be ranked in any layoff situation in inverse order of length of continuous service in the classified service and will be inserted in the ranking sequence between the groups rated as Competent and Exceeds Requirements, (adopted and effective March 13, 1986)
Section 5. SEQUENCE OF RANKING FACTORS FOR REGULAR EMPLOYEES (amended March 13, 1986, effective March 13, 1986, amended May 22, 1986, effective May 22, 1986)
5.1 Layoffs are determined by ranking in one of five categories, with Unsatisfactory being the first category affected, followed by Needs Improvement, Competent, Exceeds Requirements and Outstanding. (adopted May 22, 1986, effective May 22, 1986) In order to determine the ranking of regular employees for an anticipated layoff, each employee’s service ratings for no more than the past three years of consecutive service are averaged; the resultant scores are *533 ranked in ascending order and grouped as follows:
(a) UNSATISFACTORY service rating scores falling between 1.0 and 1.5 are considered to be the lowest average service rating.
(b) NEEDS IMPROVEMENT service rating scores falling between 1.6 and 2.5 are the next ranking group.
(c) COMPETENT service rating scores falling between 2.6 and 3.5 are the next ranking group.
(d) EXCEEDS REQUIREMENTS service rating scores falling between 3.6 and 4.5 are the next ranking group.
(e) OUTSTANDING service rating scores falling between 4.6 and 5.0 are the highest ranking group.
Service ratings received for rating periods which occurred prior to any break in continuous service shall not be included in the computation of the employee’s average rating, (amended March 13, 1986, effective March 13, 1986)
5.2 In order to determine the respective ranking of all employees within each rating category mentioned above, those employees within the respective service rating group shall be arranged in ascending order, in accordance with the employee’s consecutive service date in the classified service. The employee with the least amount of continuous service shall be ranked as the first within that service rating category to be laid off, followed by others having progressively longer periods of continuous service, (amended March 13, 1986, effective March 13, 1986, amended May 22, 1986, effective May 22, 1986)
5.3 If two or more individuals in a class designated for layoff are in the same service rating category and have the same consecutive service date in the classified service, the following tie-breaking steps shall be employed only to rank the individuals tied: (amended March 13, 1986, effective March 13, 1986, amended May 22, 1986, effective May 22, 1986)
(a) An employee who has been restored to a class having a lower salary range shall be given preference in the breaking of a tie. If the employr ees are still tied, then
(b) An employee who is entitled to Veteran’s Preference shall be laid off after the employee who does not have a qualified veteran’s preference in accordance with the provisions of Rule XIII. If the employees are still tied, then
(c) An employee who has retired from a classified position and is eligible for a pension from that system is laid off ahead of the other(s), then
(d) An employee’s prior service with the City shall then be considered, giving preference to the employee with prior service; or, if both employees have prior service, then the employee with the longest prior service with the City receives preference; if employees are still tied, then
(e) An employee who is a resident of Orleans Parish shall be given preference over a nonresident, then
(f) If the employees are still tied after completing the previous tie-breaking steps, then the tie shall be broken through the drawing of lots in a manner deemed most practicable by the Director of Personnel.
Sections 5.3a, 5.3d, 5.3e, adopted May 22, 1986, effective May 22, 1986.
Section 5.3b, 5.3c, amended May 22, 1986, effective May 22, 1986.
5.4After the sequence of layoff steps has been completed and an ordered list of employees in the designated class has been compiled, any regular employee scheduled for layoff, who has permanent status in a class having an equal or lower salary range, regardless of the organization unit, shall be restored to that class. All employees in that class shall then be ranked in accordance with the provisions of this Rule if the need for further reduction exists, (amended May 22, 1986, effective May 22, 1986)
*534 5.5 If a regular employee, after having attained permanent status in a higher class, is restored to a lower class in accordance with the provisions of Section 5.4, that employee is ranked as the final person to be laid off in that lower class when the ranking of incumbents in the lower class has been completed.
5.6 If an appointing authority feels that a certain employee is absolutely essential to the efficient and effective operation of the organization unit because of special skills or abilities, and the appointing authority wishes to retain the employee despite his or her ranking on the layoff list, a written request must be submitted to the Director of Personnel requesting permission to do so. This request must set forth, in detail, the specific skills and abilities possessed by the individual and the reasons why this particular employee is so essential to the efficient and effective operation of the organization unit. Only if the Director of Personnel approves the request may the employee be retained despite his or her ranking on the layoff list.
5.7 All employees shall be notified in writing by their appointing authority of their scheduled layoff at least ten (10) calendar days prior to the effective date of the layoff, (amended May 22, 1986, effective May 22, 1986)
5.8 Those employees who are scheduled to be laid off must be paid for all terminal leave upon separation from the service.
Section 6. PREFERRED REEMPLOYMENT BENEFITS (amended October 26, 1982, March 13, 1986)
6.1The name of every regular or probationary employee who is laid off from the classified service shall be placed on a preferred reemployment register for the classification of work the employee occupied at the time of separation from the service. If, during a layoff process the employee was also reduced from a higher classification and restored to a lower classification in accordance with the provisions of this > Rule, the employee’s name shall also be placed on the preferred reemployment list for each classification from which he or she was thus removed. The expiration date of each list will be calculated from the date removal from that classification by demotion or layoff. (amended March 13, 1986)
6.2 Separate preferred reemployment lists shall be established, for a period not to exceed two (2) years from the date of the layoff, for all regular and probationary employees who have been laid off from the classified service.
6.3 The preferred reemployment list for a particular classification of work containing the names of regular employees who were laid off shall be certified ahead of the preferred reemployment list containing the names of provision-ary employees who were laid off in the same classification of work.
6.4 The names of regular and probationary employees who have been laid off from the classified service shall be ranked on the appropriate preferred reemployment register in inverse order from the layoff list; that is, the name of the last person laid off will be listed as the first to be reemployed.
6.5 All employees who have been placed on a preferred reemployment list as a result of a layoff shall be considered for reemployment in any vacant position in the classification in which the employee has reemployment rights or in any other class for which the Director has deemed that list to be appropriate. Once a preferred reemployment list resulting from a layoff has been established, and until the expiration of that list, said list pre-empts all other methods of filling vacancies in that classification and in any other classification for which the Director has deemed that list to be appropriate. However, promotions in an established career series (for which experience at the next lowest level is the principal qualification) are specifically exempted from this requirement. Any agency, board, commission or department filling a vacancy from a preferred reem *535 ployment list resulting from a layoff shall offer the position to one of the three highest ranking eligibles willing to accept employment. However, in any case where the highest ranking eligible was laid off from the agency, board, commission or department having the vacancy, that individual shall be offered the position before any of the other eligibles may be considered, (amended October 26, 1982, effective October 26, 1982, amended March 13, 1986, effective March 13, 1986)
6.6 A former employee on a preferred reemployment list resulting from a layoff, who accepts an offer of reemployment within two (2) years from the date of layoff, shall be considered as having had no break in service for longevity pay increases for leave accrual purposes, (amended March 13, 1986, effective March 13, 1986)
6.7 A former employee on a preferred reemployment list resulting from a layoff, who declines or fails to respond to a total of three (3) offers of reemployment, shall be removed from the preferred reemployment list and will have no further preferred reemployments rights. In addition, said former employee forfeits the benefits provided by Section 6.6 of this Rule.
SUPPLEMENTAL OPINION IN RESPONSE TO MOTION ON BEHALF OF DENNIS SCHORR AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED IN PART.
SUPPLEMENTAL OPINION
This opinion is supplemental to the previous decision rendered in this matter on June 8, 1989. The prior opinion excluded any reference to appellant Dennis Schorr as the record, upon review, was incomplete as to the claims of Mr. Schorr. After having the opportunity to review the evidence pertinent to the appeal of Mr. Schorr, we hereby affirm the Commission’s ruling that Schorr’s complaint was inadequate to disturb the ratings received and action taken as a result of the lay offs.
Mr. Schorr’s central allegation was that he should have received higher ratings. For each of the years, 1983-1985, Schorr received an average rating of “Exceeds Requirements.” Schorr's supervisor, Captain Thomas Nides, testified at the Commission hearing that he conscientiously and fairly rated Schorr. Nides further stated that he always took his job seriously, which included evaluating those employees under his supervision. We agree with the Civil Service Commission that such testimony by the supervisor “as to the process he used in arriving at the evaluations and the basis for the evaluation” is much more probative than simply the belief of the complainant that he should have received a higher rating. We do not find manifest error in the Commission’s decision.
Accordingly, the ruling of the Civil Service Commission denying Dennis Schorr’s complaint is affirmed. The original judgment rendered in this matter is reaffirmed.

. A copy of Civil Service Commission Rule XII is annexed to this opinion.

. Rule XI of the Civil Service Commission, which provides for the use of service ratings, is annexed to this opinion.